**O**

# United States District Court
# Central District of California

FARSTONE TECHNOLOGY, INC.,

           Plaintiff,

    v.

APPLE INC.,

           Defendant.

Case № 8:13-cv-1537-ODW(JEMx)

**CLAIM-CONSTRUCTION ORDER [41]**

## I.  INTRODUCTION

This patent case involves computer backup and recovery technology.  Plaintiff Farstone Technology, Inc. ("Farstone") asserts U.S. Patent No. 7,120,835 ("the '835 Patent"), entitled "Computer Equipment Having a Prompt Access Function and Related Method," against Defendant Apple Inc. ("Apple").  The construction of nine terms is in dispute.  Apple argues that eight out of the nine disputed terms are indefinite under 35 U.S.C. § 112.[1]

## II.  FACTUAL BACKGROUND

Farstone is the owner of the '835 Patent.  (Compl. ¶ 8.)  Farstone alleges that Apple's Time Machine features in Apple Mac computers and MAC OS X operating systems infringe claims 1–7 and 9–13 of the '835 Patent.   (*Id*. ¶ 10.)  The asserted

---

[1] Because the patent in suit predates the effective date of the America Invents Act (AIA), all statutory citations herein are pre-AIA.

claims are directed to technology that creates a backup of the data stored in or relating to a hardware resource, such as a hard disk, and enables a user to later restore that data.   The alleged advantages of the patented invention over conventional backup/recovery software at the time are the ability to support unlimited recovery points and prompt access and economical use of system resources.   Accordingly, representative claim 1 recites:

> A computer equipment having a prompt access function, said computer equipment comprising:
>
> a processing system having at least one hardware resource with a backup/recovery module, said backup/recovery module creating at least one recovery unit to hold backup data; and
>
> a displaying system for displaying backed up data of said processing system, said backed up data of said processing system corresponding to each of said at least one recovery unit, said displaying system having a selecting means, said selecting means selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit, said displaying system displaying said selected status;
>
> wherein said at least one recovery unit respectively reflects a corresponding status of said at least one hardware resource at the time of creation of each of said at least one recovery unit, said at least one hardware resource can be restored to status at the time of creation of each of said at least one recovery unit.

'835 Patent at 8:62–9:14.   A schematic block diagram of a preferred embodiment of a computer equipment is presented below:

/ / /

/ / /

/ / /

/ / /

/ / /





'835 Patent at Fig. 1.  The computer equipment has displaying system 20 and processing system 10.

On November 3, 2014, the parties filed their final joint claim chart.  (ECF No. 44.)  The parties dispute the construction of nine terms:[2] (1) "recovery unit;" (2) "selecting means, said selecting means selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit;" (3) "selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit;" (4) "said displaying system displaying said selected status;" (5)(a) "said at least one recovery unit respectively reflects a corresponding status of said at least one hardware resource at the time of creation of each of said at least one recovery unit" and (b) "said at least one recovery unit respectively reflects a corresponding status of at least one hardware resource of said

---

[2] Apple previously proposed that the phrase "a backup/recovery module, said backup/recovery module creating at least one recovery unit to hold backup data" in claim 1 be construed.  In Apple's Responsive Claim Construction Brief (ECF No. 47) Apple agreed that no construction is necessary for this term.  (ECF No. 47, at n.3.)

processing system at the time of creation of each of said at least on recovery unit;" (6) "a status of said computer equipment at the time creating said corresponded recovery unit;" (7) "a processing system . . ., said processing system creating at least one recovery unit;" (8) "loading said selected recovery unit into said processing system;" (9) "displaying a status corresponding to said processing system which corresponds to said selected recovery unit."

Farstone filed its Opening Claim Construction Brief on November 3, 2014. (ECF No. 43.)   Apple responded and Farstone replied.   (ECF Nos. 47, 48.)   On December 10, 2014, the Court held a claim-construction hearing, which included testimony from the parties' expert witnesses.  The Court construes the disputed terms below.

## III.    LEGAL STANDARD

The purpose of claim construction is to determine the meaning and scope of the patent claims alleged to be infringed.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Claim construction is a question of law to be decided by the court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  In determining the proper construction of a claim, the Court reviews both intrinsic and extrinsic evidence, placing emphasis on the former.

### A.    Intrinsic Evidence

The court begins with intrinsic evidence of claim meaning—which consists of the claim language, patent specification, and, if in evidence, prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The Court must always begin with an examination of the claim language itself. *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011); *see also Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").  Claim

language is paramount; the other intrinsic and extrinsic evidence—while valuable—cannot be utilized to rewrite the claim language. *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The terms used in the claims are generally given their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. This "ordinary and customary meaning" is the meaning as understood by a person of ordinary skill in the art ("POSITA") in question at the time of the invention. *Id*. The POSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*.

A patentee is presumed to have intended the ordinary meaning of a claim term unless the patentee "(1) . . . sets out a definition and acts as his own lexicographer, or (2) disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The specification is "always highly relevant to the claim construction analysis." *Markman*, 52 F.3d at 978. "[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. But the court must be wary of "improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

The Court may also consider the patent's prosecution history. The prosecution history "encompasses the complete record of the proceedings before the PTO, including the prior art cited during the examination of the patent." *Id*. The prosecution history provides evidence about how the United States Patent and Trademark Office ("USPTO") and the inventor understood the invention. *Id*. But "because the prosecution history represents an ongoing negotiation between the PTO

and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

**B.   Extrinsic Evidence**

Courts may also rely on extrinsic evidence to better understand the underlying technology and to determine what a POSITA would understand the claim terms to mean. *Phillips*, 415 F.3d at 1318. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert testimony, dictionaries, and learned treatises." *Id.* at 1317. But while extrinsic evidence can be useful, it is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319. Thus, it is less significant than intrinsic evidence. *Id.*

## IV.   DISCUSSION

**A.   Apple's Challenge to the Admissibility of Farstone's Expert Witness**

As an initial matter, the Court is unconvinced by Apple's argument that Farstone's expert, Dr. Kaliski, is not qualified to opine as one of ordinary skill in the art with respect to the '835 Patent. (*See* ECF No. 47, at 5.) Apple's proposed requirement for a person of ordinary skill in the art is someone with an undergraduate degree in computer science or equivalent and one year of experience in the design and implementation of backup/recovery systems. (*Id.*)

"[W]here an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008). Federal Rule of Evidence 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.

Under Fed. R. Evi. 702 the Court finds Dr. Kaliski has the qualifications to opine on the issues before this Court from the perspective of one with ordinary skill in the art. *See Acoustical Design, Inc. v. Control Elecs. Co*., 932 F.2d 939, 942 (Fed. Cir. 1991) ("Admission of expert testimony is within the discretion of the trial court.") (citations omitted). The law does not require an expert opining from the perspective of one of ordinary skill in the art to have the same qualifications as the inventor or even be an inventor himself. *Neutrino Dev. Corp. v. Sonosite, Inc*., 410 F. Supp. 2d 529, 536 (S.D. Tex. 2006). However, the law does require that the expert be sufficiently qualified to construe the patent and understand the claimed invention as one with ordinary skill in the art of the relevant field. *Id*. "Expert witnesses quite often have extraordinary skill in the art and are perfectly capable of evaluating the level of ordinary skill and applying that perspective. The witness himself need not be the hypothetical ordinary artisan." *Id*. at 550.

Dr. Kaliski has a Ph.D in Electrical Engineering from the Massachusetts Institute of Technology and has been teaching in the field of Electrical Engineering, Computer Engineering, and Computer Science for over 35 years. (*See* ECF No. 49, Ex. F-12, Kaliski Decl., Ex. 1.) Dr. Kaliski's advanced degrees, decades of teaching, and variety of software and hardware design experience more than compensates any purported lack of experience in design and implementation of backup/recovery systems. (*See* Claim Construction Hr'g Tr. 15:1–3, Dec. 10, 2014 ("[The Court] find[s] that you are absolutely an expert in the field of backup/recovery software.").) For example, Dr. Kaliski has been on projects which include software and hardware design reconstruction, algorithm development for CAD/CAM systems, software engineering for advanced signal processing applications, and development of expert systems for verification of design standards for PC board designs and for component

testability.  (*See* Kaliski Decl. Ex. 1.)

Apple's expert, Mr. Cummings's experiences do not go far astray from Dr. Kaliski's background.  Mr. Cummings's experiences include design, implementation, and troubleshooting of backup/recovery software; design and implementation of various computer systems for aircraft testing, database machines, and weather processing; designing fault-tolerate operating systems for spacecraft; and development of software for wireless products supporting IP and ATM protocols.  (*See* Cummings Decl., Ex. 3.)

These similar experiences show that both Dr. Kaliski and Mr. Cummings have extraordinary skill in the art and are indeed qualified to opine on the '835 Patent.  To the extent the parties dispute the particular levels of a person of ordinary skill in the art,[3] the Court need not decide this factual issue in its *Markman* decision.  *See Neutrino*, 410 F. Supp. 2d at 536 ("Any disagreement between the parties about what constitutes the level of ordinary skill would present a fact issue to be resolved by the jury.").  Suffice it to say that under either definition of a person of ordinary skill in the art, the two experts are qualified to opine on issues of claim construction related to the '835 Patent.  With this matter settled, the Court turns to construing the parties' disputed terms.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Farstone argues that a person of ordinary skill in the art of the '835 patent is a person with a bachelor's degree in computer science, computer engineering, electrical engineering or the equivalent, and 3-5 years of experience in the field of computer operating systems and data recovery, or a post-graduate degree in computer science, computer engineering, electrical engineering, or the equivalent, and 1-2 years of experience in the field of computer operating systems and data recovery, or equivalent experience.  (Kaliski Decl. ¶ 17.)

**B.     Claim Construction**

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| 1. **"recovery unit"** | No construction necessary OR **If construed:** A collection of file backup data and configuration information reflecting a state of a computer hardware resource at a point in time. | Indefinite |

This language appears in claims 1, 2, 3, 9, 10, and 11. Apple argues that "recovery unit" is indefinite because neither the claim language nor the specification enables a person of skill in the art to discern the scope of the claim with "reasonable certainty." (ECF No. 47, at 6.) Specifically, Apple argues that the claim language and specification states that a "recovery unit" is created to "hold backup data" and "reflects a corresponding status of said at least one hardware resource" but says nothing about the structure of the "unit." (*Id*.)

Farstone argues that no construction is necessary, but if construed, proposes that recovery unit is "a collection of file backup data and configuration information reflecting a state of a computer hardware resource at a point in time."

Under 35 U.S.C. § 112, ¶ 2, a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." A patent claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. ——, 134 S.Ct. 2120, 2124 (2014). Patents are presumed to be valid and the burden of establishing invalidity rests on the challenger. 35 U.S.C. § 282; *id*. at 2130 n. 10.

Apple fails to show that "recovery unit" is indefinite. Apple's main contention is that Farstone "runs afoul" of the prohibition against open-ended claiming that tries

to cover any and all structures for performing a function. (ECF No. 47, at 7.) But, the Supreme Court's recent decision in *Nautilus* did not hold that a claim term must be absolutely certain to avoid indefiniteness. 134 S. Ct. at 2129 ("The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard we adopt accords with opinions of this Court stating that the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.") (internal quotations omitted).

Apple's argument bears more on breadth than indefiniteness. To the extent that Apple is arguing the scope is too broad, that goes to novelty, not indefiniteness.[4] The intrinsic record is reasonably definite in indicating what the recovery unit consists of in the context of a computer equipment. The recovery unit is created by the processing system of a computer equipment to hold backup data in a storage device. *See, e.g.*,'835 Patent at 4:34–37; 7:6–9. The type of data stored within the recovery unit includes hardware resource configuration and data in the processing system at the time the recovery unit is created. *Id*. at 4:46–49; 6:9–15. Thus, the data in the recovery unit allows the user to recover a computer equipment back to a previous state. *Id*. at 2:5–13. Therefore, in light of the specification, a person having ordinary skill in the art would be able to ascertain the meaning of recovery unit with reasonable certainty. (Kaliski Decl. ¶ 30.)

Finding that "recovery unit" is not indefinite, the Court adopts Farstone's construction of "a collection of file backup data and configuration information reflecting a state of a computer hardware resource at a point in time." (ECF No. 43, at 11.) This construction is supported by the claim language and specification. (*See* Kaliski Decl. ¶ 30.) Beginning with the claim language, claim 1 recites, "at least one recovery unit to hold backup data . . . said at least one recovery unit respectively

---

[4] Apple's arguments regarding insufficient structure for recovery unit are unavailing because "insufficient structure" is not the correct standard when determining indefiniteness. Structure is only relevant when analyzing means-plus-function claim language under 35 U.S.C. § 112, ¶ 6, which Apple does not argue and the Court does not find applicable for this term.

reflects a corresponding status of said at least one hardware resource at the time of creation of each of said at least one recovery unit." '835 Patent at 8:66–67, 9:9–12. Claim 3 also requires the "at least one recovery unit" to include "configuration corresponding to said at least one hardware resource and said backup data . . . ." *Id.* at 9:21–23.

The specification is also instructive. Specifically, the specification repeatedly explains that each recovery unit contains both backup data and configuration information corresponding to a hardware resource. *See e.g., id.* at 2:42–48, 3:7–11, 4:44–49, 6:10–15 ("The status corresponding to the processing system is a status of the computer equipment at the time creating the corresponded recovery unit. The data contained in the processing system corresponding to the recovery unit includes configuration corresponding to the hardware resources and the backup data held in the recovery unit respectively.") Thus, the specification, like the claim language, depicts the "recovery unit" as "a collection of file backup data and configuration information reflecting a state of a computer hardware resource at a point in time."

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **2. "selecting means, said selecting means selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit"** | No construction necessary OR **Recited Function:** Selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit. **Corresponding Structure:** A user interface and input devices. | **Recited Function:** Selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit. **Corresponding Structure:** No corresponding structure disclosed. |

This phrase appears in claim 1. Farstone argues that this term is readily understood and requires no construction. (ECF No. 43, at 13.) Farstone contends that

this term should not be construed as a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6 despite the fact that the term includes the word "means." (*Id*. at 14.)

Under 35 U.S.C. § 112, ¶ 6 a patentee has the option to express a claim limitation as "a means or step for performing a specified function without the recital of structure, material, or acts in support thereof," and a claim limitation expressed in this manner "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350, 1355–56 (Fed. Cir. 2011). The use of the word "means" presumptively invokes 35 U.S.C. § 112, ¶ 6. *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256. 1259 (Fed. Cir. 2008). The presumption is rebutted "if the claim itself recites sufficient structure to perform the claimed function." *Envirco Corp. v. Clestra Cleanroom, Inc*., 209 F.3d 1360, 1364 (Fed. Cir. 2000); *see also Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1427–28 (Fed. Cir. 1997) ("[W]here a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format."). Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure. *See Altiris, Inc. v. Symantec Corp*., 318 F.3d 1363, 1376 (Fed. Cir. 2003).

Apple argues that Farstone has failed to overcome the presumption of invoking § 112, ¶ 6 because it has not shown that the claim language contains sufficiently definite structure to perform the recited function. (ECF No. 47, at 9.) The Court agrees. Farstone argues that a person of ordinary skill in the art would understand that "selecting means" refers to a user interface and input devices, such as a keyboard and mouse. (ECF No. 43 at 14.) Unfortunately, the structure that Farstone recites does not come from the claim language but from the specification. *See* '835 Patent at 5:32–36. Further, claim 4 suggests that "selecting means" and "user-operating interface"

1    are distinct portions of the displaying system and therefore the structure of a user

2    interface and input device is not applicable to selecting means.  *See* '835 Patent at

3    9:25–26 ("The computer equipment according to claim 1, wherein said displaying

4    system has a user-operating interface.").  Finally, "displaying system" does not

5    provide sufficient structure to rebut the means-plus-function presumption because it is

6    not linked in the claim as the "means" for selecting a status.  Rather, the displaying

7    system is recited as *including* those means.  *Id*. at 9:4–7 ("[S]aid displaying system

8    *having* a selecting means . . .") (emphasis added).  Therefore, Farstone has failed to

9    rebut the presumption.

10         Having concluded that selecting means recited in claim 1 is drafted in means-

11   plus-function format, the Court turns to the means-plus-function analysis.  The overall

12   means-plus-function analysis is a two-step process.  First, the Court must identify the

13   claimed function.  *Applied Med. Res. Corp. v. U.S. Surgical Corp*., 448 F.3d 1324,

14   1332 (Fed. Cir. 2006).  Second, the Court must identify the corresponding structure in

15   the specification that performs the recited function.  *Id*.  The parties do not dispute the

16   recited function of the term; therefore the Court will address the second step of the §

17   112, ¶ 6 analysis regarding corresponding structure.

18         It is well-established that the "specification must be read as a whole to

19   determine the structure capable of performing the claimed function."  *Budde v.*

20   *Harley–Davidson, Inc*., 250 F.3d 1369, 1379 (Fed. Cir. 2001).  A "structure disclosed

21   in the specification is corresponding structure only if the specification or prosecution

22   history clearly links or associates that structure to the function recited in the claim."

23   *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed.

24   Cir. 2003) (citation omitted).  "The duty of a patentee to clearly link or associate

25   structure with the claimed function is the quid pro quo for allowing the patentee to

26   express the claim in terms of function under section 112, paragraph 6."  *Id*. at 1211

27   (citations omitted).  Thus, "[i]f an applicant fails to set forth an adequate disclosure,

28   the applicant has in effect failed to particularly point out and distinctly claim the

1    invention...."  *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 948 (Fed. Cir.
2    2007) (citation omitted).  Whether the specification "adequately sets forth structure
3    corresponding to the claimed function necessitates consideration of that disclosure
4    from the viewpoint of one skilled in the art."  *Budde*, 250 F.3d at 1376.

5         In the alternative, Farstone argues that the corresponding structure for selecting
6    means is a user interface and input device.  (ECF No. 43, at 15.)  Apple argues that
7    there is no corresponding structure disclosed in the specification and therefore the
8    "selecting means" phrase is indefinite.  (ECF No. 47, at 9.)

9         The Court rejects both proposals and finds that the invention of the '835 Patent
10   is performed on a general purpose computer and therefore the structure associated
11   with "selecting" for a general purpose computer is applicable.  (*See* Hr'g Tr. 52:24–
12   53:3.)  The Federal Circuit has held that "[i]n a means-plus-function claim in which
13   the disclosed structure is a computer, or microprocessor, programmed to carry out an
14   algorithm, the disclosed structure is not the general purpose computer, but rather the
15   special purpose computer programmed to perform the disclosed algorithm."  *WMS*
16   *Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999) (citing *In re*
17   *Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994.)).  The Federal Circuit explained that
18   "[t]he instructions of the software program that carry out the algorithm electrically
19   change the general purpose computer by creating electrical paths within the device."
20   *Id*. at 1348.  Thus, "[t]hese electrical paths create a special purpose machine for
21   carrying out the particular algorithm."  *Id.*

22        Nonetheless, the Federal Circuit has also warned that this rule does not
23   automatically apply to any function that is linked to a general purpose computer.  *In re*
24   *Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).
25   Rather, the rule applies when specific functions would need to be implemented by
26   programming a general purpose computer to convert it into a special purpose
27   computer capable of performing those specified functions.  *Id*.  That is, if a general

28

purpose computer is sufficient for performing the function, then no algorithm is required as the corresponding structure. *Apple*, 757 F.3d at 1298.

"Selecting" is a common computer function and therefore requires no additional structure to be disclosed. (*See* Kaliski Decl. at ¶¶ 32, 34-35.) *See also Horus Vision, LLC v. Applied Ballistics, LLC*, No. 13-CV-05460-BLF, 2014 WL 6989233, at *4 (N.D. Cal. Dec. 9, 2014) ("Because patents enjoy the presumption of validity, where disputes arise as to the sufficiency of the specification's disclosure of a structure corresponding to a particular means-plus-function claim limitation, the defendant bears the burden of proving that an ordinary artisan would not understand the disclosure.") (quotations and citations omitted). The Federal Circuit has previously found that for simple functions like "processing," "receiving," and "storing," the specification did not need to disclose an algorithm. *In re Katz*, 639 F.3d at 1315–16. Since a general purpose computer could perform those functions without any programming, the Federal Circuit concluded that no algorithm was necessary. *Id*. "Selecting means" of claim 1 falls within that same category. The recited function is simply selecting or choosing a recovery unit on a displaying system. Since these functions do not need to be implemented by a special purpose computer, an algorithm is unnecessary. *See In re Katz Interactive Call Processing Patent Litig*., 821 F. Supp. 2d 1135, 1153 (C.D. Cal. 2011). Therefore, "selecting means" is not indefinite for lack of corresponding structure.

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| 3. **"selecting a status corresponding to said processing system at the time of creation of each of said at least one recovery unit"** | No construction necessary Or **If construed:** Selecting a recovery unit | Indefinite |

This phrase appears in claim 1. The point of contention in this claim term is the construction of the term "status." Apple argues that the specification does not provide

a clear construction for the term "status."  (ECF No. 47, at 12.)  Farstone equates "status" with "recovery unit."  (ECF No. 43, at 16.)  The Court disagrees with Apple's argument that no construction is supported in the specification, but does not entirely agree with the construction offered by Farstone.  The Court construes "status" as "data in the processing system at that time, including file backup data and hardware configuration."  The distinction between "status" and "recovery unit" is time.  That is the "status" of a computer now, will be a "recovery unit" in the future.  This construction is supported by the language in claim 1: "[A] status corresponding to said processing system *at the time of creation* of each of said at least one recovery unit . . . at least one recovery unit respectively reflects a corresponding status of said at least one hardware resource *at the time of creation* of each of said at least one recovery unit . . . ."  '835 Patent at 9:5–12 (emphasis added).   In most of the claims "status" is followed by "at the time of creation" or preceded by the term "previous," both indicating that "status" corresponds to time.  *See e.g. id*. at 9:38–39, 50–58.   The Court's reading of the claim language is consistent with the specification:

> The *status* corresponding to the processing system is a *status of said computer equipment at the time creating said corresponded recovery unit*.  The data contained in the processing system corresponding to the recovery unit includes configuration corresponding to the hardware resource and the backup data held in the recovery unit respectively.

'835 Patent at 4:44–49.  That is, a "previous status" is equivalent to a "recovery unit." *See id*. at 4:6–11 ("The present invention describes a new computer equipment with a virtually recovery utility, which can accomplish file access to the contents of the recovery point to make sure of the previous status to be restored after rebooting the computer system.")

Apple contends that the term "status" is indefinite because it "could be any of a vast number of things."  (ECF No. 47, at 12.)  The term "status" is not construed in a vacuum but within the context of the specification.  *See Apple Computer, Inc. v.*

*Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) ("[T]he claim must be interpreted in light of the teachings of the written description and purpose of the invention described therein.")  As articulated by Farstone, the object of the backup/recovery system in the '835 Patent is to enable the user to return a hardware resource in the processing system to a state that is operational which includes hardware configuration information and backup file data of interest to the user. (Kaliski Decl. ¶ 39.)  *See, e.g.* '835 Patent at 1:54–58, 2:25–29, 5:54–59, 8:28–30. One of ordinary skill in the art would understand "status" to be the data associated with the operational state.  (Kaliski Decl. ¶ 38.)

Furthermore, the Court does not object to Farstone's use of "state or condition" as a substitute for "status" in its proposed constructions.  (*See* ECF No. 43, at 13.) While the Court does not agree that "state or condition" provides more clarity, to the extent that the terms encompass the construction of status as articulated above, the Court finds "state or condition" consistent with "status."  Therefore, the Court construes "status" as "data in the processing system at that time, including file backup data and hardware configuration."

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **4. "said displaying system displaying said selected status"** | No construction necessary Or **If construed:** The displaying system displays the state or condition of the processing system reflected in the selected recovery unit. | Indefinite |

This phrase appears in claim 1.  Apple argues that this term is indefinite because a person of ordinary skill in the art cannot determine with reasonable certainty what it means. (ECF No. 47, at 15.) Part of Apple's argument relates to the construction of "status" which was addressed above.  Because a construction for

1   "status" is supported by the claim language and specification, "said selected status" is

2   not indefinite.

3       Apple also argues that Farstone's construction is "difficult to follow."  Apple

4   has failed to explain how "difficult to follow" is a criteria when considering the issue

5   of indefiniteness.  The Court is unconvinced that the specification and claim language

6   do not support a construction with reasonable certainty for this term.  The Court

7   agrees with Farstone that the '835 Patent uses the ordinary and customary meaning of

8   the term "displaying."  That is "displaying" means visible to the user.   (ECF No. 43,

9   at 17; *see also* Kaliski Decl. ¶¶ 40–42.)

10      The language in claim 1 supports this construction of "displaying."  Claim 1

11  describes a "displaying system" which also includes a selecting means to select a

12  previous status or recovery unit.  '835 Patent at 9:1–8.  The displaying system

13  displays the selected status.  *Id*.  Thus, a user can only select a status if it is visible by

14  a displaying system.

15      Further, the specification describes that users can open and view files in the

16  selected recovery unit, so they can determine the outcome of a recovery operation

17  beforehand.  '835 Patent at 5:59–62, 4:26–30.  (Kaliski Decl. ¶ 41.)  The specification

18  also describes displaying a selected status displaying a recovery point in file folder

19  format and displaying contents of files in the recovery point opened by the user.  *See*

20  *id*. at 6:29–30, 38–39, 8:28–30.

21      Therefore, because "status" is not indefinite (as explained above) and

22  "displaying" is afforded its plain and ordinary meaning, "said displaying system

23  displaying said selected status" is not indefinite.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **5. "said at least one recovery unit respectively reflects a corresponding status of said at least one hardware resource [of said processing system] at the time of creation of each of said at least one recovery unit"** | No construction necessary Or **If construed:** The recovery units reflect a state or condition of at least one hardware resource at the time the recovery unit is created. | Indefinite |

This phrase appears in claims 1 and 9.  The basis of Apple's contention is that the term "status" is indefinite.  Having found otherwise above, the Court finds no other construction is necessary for this term.

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **6. "a status of said computer equipment at the time creating said corresponded recovery unit"** | No construction necessary. Or **If construed:** State or condition of the computer equipment at the time a corresponding recovery unit is created. | Indefinite |

This language appears in claims 2 and 10.  The basis of Apple's contention is that the term "status" is indefinite.  Having found otherwise above, the Court finds no other construction is necessary for this term.

Apple also argues that this term renders claim 2 indefinite because "status of said computer equipment" in claim 2 is broader than a "status corresponding to said processing system" in claim 1, from which claim 2 depends.  35 U.S.C. § 112, ¶ 4 states: "[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed.  A claim in dependent form shall be construed to incorporate by reference all the limitations of the

claim to which it refers."  35 U.S.C § 112, ¶ 4.   "Under the principles of claim differentiation, the independent claims are presumed to be broader."  *Hill Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1376 (Fed. Cir. 2014).

In this case Apple has failed to rebut this presumption because dependent claim 2 can be read as narrower than claim 1.  *See Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 3:12-CV-01065-HZ, 2014 WL 6809749, at *3 (D. Or. Dec. 2, 2014) ("[C]laims should be so construed, if possible, as to sustain their validity.") (citing *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984)).  The computer system in the '835 Patent comprises a processing system and displaying system.  *See, e.g.*,'835 Patent at 8:62–9:2.  Therefore, the status of said computer equipment in claim 2 encompasses the status of both the processing system and the displaying system, which is narrower than the just the status of the processing system in claim 1.  Thus, Apple's argument fails.

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **7. "a processing system . . ., said processing system creating at least one recovery unit"** | No construction necessary OR If 35 U.S.C. § 112, ¶ 6 applies: **Recited Function**: Creating at least one recovery unit **Corresponding Structure:** A processing system including a backup/recovery module | Should be construed as 35 U.S.C. § 112, ¶ 6 limitation **Recited Function:** Creating at least one recovery unit **Corresponding Structure:** None disclosed. |

This phrase appears in claim 9.  Apple argues that this term should be construed under 35 U.S.C. § 112, ¶ 6, despite the term "means" not appearing in the phrase. (ECF No. 47, at 19–20.)  There is a strong presumption against means-plus-function claim construction when the term "means" is not used.  *See Apple*, 757 F.3d at 1297 ("We have repeatedly characterized this presumption as strong and not readily overcome and, as such, have seldom held that a limitation without recitation of means

is a means-plus-function limitation.") (quotations and citations omitted).    This presumption is only overcome if the claim fails to recite "sufficiently definite structure" or merely recites a "function without reciting sufficient structure for performing that function." *Id.* (quoting *Linear Tech. Corp., v. Impala Linear Corp.*, 379 F. 3d 1311, 1319 (Fed Cir. 2004).  Apple has failed to rebut this presumption.

The Court finds that the term "processing system" has sufficient structure to a person of ordinary skill in the art.  The language in claim 1 recites: "said computer equipment comprising a processing system having at least one hardware resource with a backup/recovery module." '835 Patent at 8:63–65.  Claim 1 does not reference processing system in only functional terms, but rather in structural terms as a portion of a computer equipment with a hardware resource.  The preferred embodiment described in Figure 1 of the '835 Patent further supports that processing system has definite structure.  The processing system 10 is composed of a processing unit 12, input/output device 16, storage device 14, and hard disk drive 18.  *See* '835 Patent at 4:65–5:10.  Therefore, the structure found in claim 1 can be imputed to "processing system" in claim 9.  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").

Alternatively, Farstone argues that no construction of "processing system" is required because the term exists in the preamble of claim 9 and the preamble is not limiting.  The Court disagrees and finds that the preamble in claim 9 limits the scope of the claim.  "Whether to treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal citations omitted).  In this case the preamble is limiting because it "recites essential structure that is important to the invention or necessary to give meaning to the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).  Additionally, the body of

the claim derives an antecedent basis from the preamble for at least the terms "recovery unit" and "processing system." *See id.* ("Moreover, when the limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."). Therefore, the preamble further limits "processing system" by requiring it to create at least one recovery unit.

Both Farstone and Apple have failed to provide the Court with any alternative constructions for this term.  Consequentially, the Court must now construe the term "processing system" without the assistance of arguments from either party.  The Court construes "processing system" as "a portion of a computer equipment having at least one hardware resource with backup/recovery module and creating at least one recovery unit."  As mentioned earlier, the language in claim 1 and the specification supports this construction.   Claim 9 also recites: "A recovery method for providing a user with an outcome of recovery operation beforehand, suitable for a computer system including a processing system and a displaying system, said processing system creating at least one recovery unit . . ."  '835 Patent at 9:40–44.  Again, the preferred embodiment described in Figure 1 is instructive:

> The computer equipment having a prompt access function includes a processing system 10 and a displaying system 20. The processing system 10 has at least one hardware resource for processing or operating, such as a computer system, wherein a processing unit 12, a storage device 14, and an I/O device 16 are included therein. The processing system 10 may also include a CD-ROM drive, a printer or a soft disk drive.

*Id.* at 4:63–5:3.  Thus, the claim language and specification support the Court's construction of "processing system" as "a portion of a computer equipment having at least one hardware resource with backup/recovery module and creating at least one recovery unit."

/ / /

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **8. "loading said selected recovery unit into said processing system"** | No construction necessary Or **If construed:** Copying some or all of the selected recovery unit into memory in the processing system | Making the selected recovery unit available as a logical drive. |

This language appears in claim 9.  The Court agrees with Farstone that one of ordinary skill in the art would understand that this term means "copying some or all of the selected recovery unit into memory in the processing system."  (ECF No. 43, at 22.)  Specifically, the Court agrees that the term "loading" is a common term in computer technology meaning to copy a program or data into a computer's memory. *See, e.g.*, *Merriam Webster's Collegiate Dictionary* (11th ed. 2003) ("to copy or transfer (as a program or data) into a computer's memory esp. from an external source (as a disk drive or the Internet)"; "to become loaded into a computer's memory"); *Dictionary of Computing* 213 (4th ed. 2002) ("to transfer a file *or* program from disk *or* tape to main memory."); *Microsoft Computer Dictionary* 315 (5th ed. 2002) ("To place information from storage into memory for processing, if it is data, or for execution, if it is program code.").  The '835 patent uses "loading" in accordance with its conventional meaning.  *See, e.g.,* '835 Patent at Abstract; 1:36–37; 3:42–44; 5:48–53.  (*See also* Kaliski Decl. ¶¶ 53–54.)

In a rare departure from its previous arguments, Apple provides a construction of "making the selected recovery unit available as a logical drive."  This construction is not supported by the specification.  The only reference to "logical drives" in the entire specification is in the discussion of the prior art.  *See* '835 Patent at 1:27–31, 1:34–37, 1:47–40.   This discussion distinguishes the prior art on the basis that it had to mount recovery points as logical drives and therefore was limited in the number of recovery points that could be accessed.  In contrast, the patent explains that an objective of the invention is to provide "unlimited recovery points for prompt

checking." *See, e.g.*, '835 Patent at 2:14–17.  Furthermore, a person of ordinary skill would know that there is no need to make a recovery unit "available as a logical drive" in order to load it into the processing system.  (*See* Kaliski Decl. ¶ 55.) Therefore, the Court adopts Farstone's construction.

| CLAIM TERM | FARSTONE'S CONSTRUCTION | APPLE'S CONSTRUCTION |
|---|---|---|
| **9.  "displaying a status corresponding to said processing system which corresponds to said selected recovery unit"** | No construction necessary Or **If construed:** Displaying the state or condition of the processing system that corresponds to the selected recovery unit. | Indefinite. |

This language appears in claim 9.  The basis of Apple's contention is that the term "status" is indefinite.  Having found otherwise above, the Court finds no other construction is necessary for this term.

## V.   CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above. In light of this Claim Construction Order, the parties may file a Joint Proposed Post-*Markman* Scheduling Order re-setting the remaining dates and deadlines for this case for the Court to consider.  The proposed order should be filed by no later than **March 13, 2015**.  If no proposed order is filed, the original schedule (subject to any Court granted extensions) will remain in place.

**IT IS SO ORDERED.**

February 27, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

24